**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

    Plaintiff,

v.

Case No. 3:22-cv-1055-TJC-MCR

JARED D. EAKES and JAMES
BLAKE DAUGHTRY,

    Defendants.

## O R D E R

This case is before the Court on Defendant James Daughtry's Motion to Dismiss or in the Alternative Transfer [of the] Case (Doc. 24). Plaintiff United States Securities and Exchange Commission ("SEC") opposes both the dismissal and transfer. The Court held a hearing on November 14, 2023, the record of which is incorporated by reference. (See Docs. 29, 30). The SEC has since attempted to serve Defendant Jared Eakes through alternative means but its Motion for Entry of Default against Eakes was denied without prejudice. (Docs. 34, 35). Daughtry's motion is ripe for review.

**I.    BACKGROUND**

The SEC sues Eakes and Daughtry for their alleged involvement in an investment advising scheme that defrauded numerous clients out of millions of

dollars. In the Amended Complaint, the SEC alleges Eakes owned and operated GraySail Advisors, LLC ("GraySail") in Jacksonville, Florida from October 2018 through August 2019. (Doc. 20 ¶ 20). Eakes previously worked as a registered representative with Merrill Lynch, Pierce, Fenner & Smith, Inc. before starting GraySail. Id. From 2015 to 2020, Daughtry resided in Alabama and worked as a registered representative with Kestra Investment Services, LLC and investment adviser representative with Kestra Advisory Services, LLC (collectively, "Kestra"). Id. ¶ 21. Daughtry also operated a solo advisory business from 1999 to 2020. Id. ¶¶ 21, 23.

After advertising its sale in late 2018, Daughtry sold his advisory business to GraySail pursuant to a Merger and Contract Agreement ("Merger Agreement") in March 2019. Id. ¶¶ 23, 24. At that time, Daughtry's business comprised 150 clients and 250 accounts, which translated to approximately $43 million in assets under management ("AUM"). Id. ¶ 24. The Merger Agreement provided that Daughtry would continue serving as an investment adviser for his clients who moved to GraySail for at least three years. Id. ¶ 25.

As alleged, Daughtry took several actions when transitioning his clients to GraySail. Id. ¶¶ 37−40. First, he told his clients little about the firm, described the process as a merger, and never disclosed that he had previously sold their accounts to GraySail or the compensation he received from GraySail. Id. ¶ 37. Second, he had several clients sign a "GraySail Advisory Agreement,"

2

which gave GraySail limited power of attorney and broad discretionary authority over the clients' assets. Id. ¶ 38. Some clients received only signature pages of these agreements. Id. ¶ 39. Third, once clients moved to GraySail, Daughtry no longer reviewed the clients' transactions and accounts, and never informed the clients that he had stopped this review. Id. ¶ 40.

Between May and November 2019, Eakes allegedly stole about $2 million from Daughtry's clients. Id. ¶ 42. Eakes allegedly engaged in a similar scheme defrauding clients from another broker-dealer registered representative in Arkansas as well. Id. ¶¶ 71–75.

The SEC pleads five counts. Id. at 16–20. The SEC brings the first four counts against Eakes only for fraud in violation of sections 17(a)(1) and 17(a)(3) of the Securities Act (15 U.S.C. §§ 77q(a)(1) and (3)) (Counts I and II); in violation of section 10(b) of the Exchange Act and Rule 10b-5 (15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and (c)) (Count III); and, in violation of section 206(1) of the Advisers Act (15 U.S.C. § 80b-6(1)) (Count IV). The last count, Count V, against both Eakes and Daughtry, is a cause of action for fraud in violation of section 206(2) of the Advisers Act (15 U.S.C. § 80b-6(2)). For Daughtry, the SEC seeks an order permanently restraining him from violating Section 206(2) of the Advisers Act, requiring disgorgement of his ill-gotten gains derived from the activities alleged, and requiring payment of a civil penalty pursuant to section 209 of the Advisers Act. (Doc. 20 at 22).

Daughtry moves to dismiss or transfer the case to the Middle District of Alabama. (Doc. 24). After the SEC's attempts to find and serve Eakes proved unsuccessful, the magistrate judge granted the SEC's Motion for Substituted Service on Eakes (Doc. 28). The SEC, however, failed to file an affidavit of service on Eakes by substituted service on the Florida Secretary of State in compliance with section 48.161, Florida Statutes, and the magistrate judge denied the SEC's Motion for Default as to Eakes. (Doc. 35).

## II.  LEGAL ANALYSIS

### A.  Dismissal

Daughtry argues the Amended Complaint should be dismissed because it is a shotgun pleading and does not satisfy Federal Rule of Civil Procedure 9(b). Neither argument succeeds.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a complaint simply needs to contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

4

Complaints that violate Rule 8(a)(2) are "often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015).

The Amended Complaint is not a shotgun pleading. It appears that Daughtry repurposed an argument from his original motion to dismiss that no longer applies to the Amended Complaint, as Daughtry quotes a hybrid of the original complaint and Amended Complaint. (Doc. 24 at 3–4).

Further, to the extent Daughtry argues the Amended Complaint falls prey to shotgun pleading because Count V "lumps together" Daughtry and Eakes (see Doc. 24 at 4−6), this too falls short. Although the SEC brings Count V against both defendants and contains brief allegations tracking the language of the Advisers Act, the Count appropriately incorporates all the factual allegations, which delineate and notify each Defendant of the actions allegedly violating the Advisers Act. For example, the SEC organizes the factual allegations under subheadings that include "Eakes Acquires Daughtry's Advisor Business" (see Doc. 20 at 6), "Eakes Misappropriates from Daughtry's Clients" (Id. at 10), and "Daughtry Breached His Fiduciary Duties to His Clients" (Id. at 12), under which the SEC alleges each of Daughtry's actions taken in advancement of the scheme. In short, the Amended Complaint does not commit the sins of shotgun pleading as described in Weiland and adequately notifies Daughtry of the allegations against him.

5

The Amended Complaint also satisfies the particularity requirement under Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This Rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1370–71 (11th Cir. 1997) (quoting Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)). But "Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." Id. at 1371 (quotation marks, brackets, and citation omitted).

A plaintiff may satisfy the Rule 9(b) standard by alleging: (1) the precise statements, oral representations, or omissions made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud. Id.

Count V alleges fraud under the Advisers Act. The Advisers Act makes it "unlawful for any investment adviser by use of the mails or any means or

6

instrumentality of interstate commerce, directly or indirectly . . . to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b-6(2). Daughtry argues the SEC fails to make any required specific allegations about the mailings, persons allegedly harmed, and alleged transactions, practices and course of business by Daughtry that operated as fraud and deceit on one or more advisory and/or prospective clients as required to satisfy Rule 9(b). (Doc. 24 at 4–7). But Daughtry's challenges overlook the detailed pleading the SEC makes describing the alleged fraudulent scheme and how Daughtry's actions contributed to that scheme. For example, the SEC alleges Daughtry caused several clients to sign a "GraySail Advisory Agreement" that gave GraySail broad authority and limited power of attorney over their assets without informing the clients of these powers granted. (Doc. 20 ¶¶ 38–39). This allegation alone satisfies the pleading standard of a specific omission required by Rule 9(b). The SEC similarly describes the ways in which Daughtry allegedly failed to exercise proper care for his clients that enabled Eakes to defraud the clients. (See Doc. 20 ¶¶ 55–70). Daughtry cites no cases indicating that the SEC must specify the means any further. Therefore, these arguments fail and the motion to dismiss is due to be denied.

### B.   Severance

The Federal Rules of Civil Procedure provide that "[o]n motion or on its

own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Moreover, the court may proceed with the severed claim separately. See United States v. O'Neil, 709 F.2d 361, 367–68 (5th Cir. 1983) (citing Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc., 498 F.2d 358, 361–62 (2d Cir.1974)). "It is ultimately within the court's discretion to sever a party or claim to proceed separately from the main action." Clay v. AIG Aerospace Ins. Servs., Inc., 61 F. Supp. 3d 1255, 1271 (M.D. Fla. 2014).

A district court may sever claims if it has "sound administrative reasons to try to simplify a case." Est. of Amergi ex rel. Amergi v. Palestinian Auth., 611 F.3d 1350, 1367 (11th Cir. 2010). "When addressing a question of severance, the court must determine 'whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together [or separately], and whether any party would be prejudiced if they did.'" Clay, 61 F. Supp. 3d at 1271 (M.D. Fla. 2014) (quoting AF Holdings, LLC v. Does 1–162, No. 11–23036–Civ., 2012 WL 488217, at *2 (S. D. Fla. Feb. 14, 2012) (alteration in Clay)); see also Potts v. B & R, LLC, No. 8:13-cv-2896-JDW, 2014 WL 1612364, at *3 (M.D. Fla. Apr. 21, 2014) ("A district court also has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such as judicial economy, case management, prejudice to parties, and fundamental fairness.").

This Court conducts this severance analysis through four enumerated

8

factors: (1) do the claims arise from the same transaction or occurrence; (2) if they present a common question of law or fact; (3) will severance facilitate settlement or judicial economy; and, (4) the relative prejudice to the parties if the motion [to sever] is granted or denied. See Fed. Deposit Ins. Corp. v. Stewart Title Guar. Co., No. 8:12-cv-2244-CEH, 2013 WL 12155930, at *1 (M.D. Fla. Mar. 27, 2013) (citing E–Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc., No. 8:10-cv-1870-JDW, 2011 WL 4343790 (M.D. Fla. Aug. 10, 2011)). Other Middle District of Florida courts evaluate additional factors to determine the appropriateness of severance claims. See, e.g., Malibu Media, LLC v. Does 1-28, 295 F.R.D. 527, 536 (M.D. Fla. 2012) (severing claims based on "concerns of fairness, prejudice, expedience, cost, practicality, and case management. . .").

Though Daughtry has not requested severance, he has asked that the case be transferred to the Middle District of Alabama. Under Rule 21, the Court may sever the claims as to Daughtry without a motion. In applying the relevant factors, severance of the Count V claim as to Daughtry is appropriate. The first and second factors (whether the claims arise from the same transaction or occurrence and whether the claims present common questions of law or fact) weigh against severance, as the allegations in the Amended Complaint arise from the same transaction and occurrence, and Count V realleges the same facts as Counts I through IV. The third factor (whether severance will facilitate settlement or judicial economy) is neutral. The remaining factor is the relative

9

prejudice to the parties if severance is granted or denied. This factor weighs in favor of severance. The SEC has yet to properly serve Eakes through substitute service, and its motion for default judgment was recently denied. Taking into consideration Daughtry's request to transfer this case to Alabama, as discussed more below, it is in the interest of justice to sever Count V of the Amended Complaint as to Daughtry so the case against him can be transferred to Alabama. Daughtry is prejudiced by the obligation to litigate this case in Florida when the situs of the case as to him is in Alabama, he is an Alabama resident, his business was in Alabama, and all the persons whom Daughtry allegedly defrauded resided in Alabama. (Doc. 20 ¶ 21; Doc. 24 at 9). The SEC, with its substantial resources, may be inconvenienced by having to prosecute these cases against Daughtry and Eakes in two different federal courts, but will not be as burdened as Daughtry if he must defend this case in Florida. Severing Count V against Daughtry to allow transfer will promote expediency and practicality in litigating this case.

### C.  Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts should be "somewhat restrictive in transferring actions," and should recognize "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly

10

outweighed by other considerations." Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc. 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999) (quoting Robinson v. Giamarco & Bill, P.C., 74 F. 3d 253, 260 (11th Cir. 1996)). A court should consider the following factors when determining whether transfer is appropriate: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Circ. 2005).

Daughtry argues the case as to him should be transferred to the Middle District of Alabama. The Alabama district court has jurisdiction over the subject matter of the SEC's complaint. See e.g., 15 U.S.C. § 77v; 15 U.S.C. §§ 78u(d), 78u(e), and 78aa; and 15 U.S.C. § 80b-14(a). The parties also do not dispute that Daughtry is a resident of Dothan, Alabama. (Doc. 20 ¶ 21; Doc. 24 at 9). Dothan is located within the geographical area of the Middle District of Alabama. (Doc. 24 at 9). Daughtry's investment business was located in and operated in Dothan. (Doc. 20 ¶ 21; Doc. 24 at 9). As Daughtry and the persons whom he allegedly defrauded all reside in Alabama, the action against Daughtry could

have been brought in the Middle District of Alabama.

The SEC asserts that it "filed the action in this District because it is the District in which both Eakes and GraySail resided at the time of the relevant events and where the most significant events giving rise to the SEC's claims likely occurred." (Doc. 25 at 3). While true, the way the case has played out with Eakes defaulting, this is of less concern. In any event, the SEC will not be substantially prejudiced with transfer of the single count as to Daughtry because the Court, through severance, is the leaving the case against Eakes in the Middle District of Florida.

While the Court recognizes there is "a strong presumption of favor for a plaintiff's choice of forum" (see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, (1981)) and that transfer of venue should only occur in limited circumstances, the efficiency and fairness of transferring Count V against Daughtry outweigh the SEC's initial choice of forum. It will be more appropriate for Daughtry to defend this claim in Alabama. The Court understands Daughtry is also defending similar claims in Alabama state court from allegedly defrauded customers. (Doc. 24 at 14). Daughtry will be unduly burdened by litigating this case in Florida in which his co-defendant, Eakes, is not even present. The remaining factors, based on the totality of the circumstances, do not disfavor transfer of Count V as to Daughtry.

Accordingly, it is hereby

**ORDERED:**

1.  Defendant James Blake Daughtry's Motion to Dismiss or in the Alternative Transfer Case (Doc. 24) is **GRANTED IN PART AND DENIED IN PART**. The motion to dismiss is **DENIED**. The Court hereby **SEVERS** Count V of the Amended Complaint as to Daughtry and **TRANSFERS** the case as to Daughtry to the United States District Court for the Middle District of Alabama, Dothan Division. Once the case is opened in Alabama, the SEC will likely need to file an amended complaint with Daughtry as the only party.

2.  The Clerk is **DIRECTED** to terminate Defendant James Daughtry as a party to this suit.

3.  The case remains open as to Defendant Jared Eakes.

**DONE AND ORDERED** in Jacksonville, Florida, the 20th day of February 2024.



TIMOTHY J. CORRIGAN
United States District Judge

jcd
Copies to:
Counsel of record